**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **VALERIO OLGIATI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:23cv00352** |
| **v.** | ) | |
| | ) | |
| **MARKUS BREITSCHMID,** | ) | **By: Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

To be actionable as defamation or defamation per se, a statement must be not only false, but carry a defamatory sting harming the plaintiff's reputation. Statements of opinion are not defamatory and will not survive a motion to dismiss. Here, the counterclaim for defamation and defamation per se of defendant / counterclaim plaintiff Marcus Breitschmid must be **DISMISSED** because the alleged defamatory statement is an opinion and lacks the requisite defamatory sting. Dkt. 5. While Breitschmid has moved to amend his counterclaims to provide additional facts, the proposed amendments do not change the nature of the statement and thus, the motion to amend must be **DENIED** as futile. Dkt. 23. However, I will permit Breitschmid to amend his affirmative defenses.

**I.      Background:**

Olgiati, a citizen of Switzerland, brought a two-count complaint against Breitschmid, alleging claims for breach of implied contract and an alternative claim for unjust enrichment. Breitschmid filed an Answer and Counterclaim for defamation and defamation per se. The court accepts a non-moving party's allegations as true when ruling on a motion to dismiss; Breitschmid is the non-moving party here, thus, the facts contained in his Answer are taken as true. See <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).

Olgiati and Breitschmid are both architects. Breitschmid is an architecture professor at Virginia Tech in Blacksburg, Virginia and a trained architect. Olgiati is a Swiss architect operating out of Flims, Switzerland. Dkt. 5 at 15, ¶¶ 6–7. They first met in 2006 and collaborated on numerous projects during the following 16 years, including co-publishing books and working on symposia and lectures, becoming "personal friends." Id. at 15, ¶¶ 8–9. They discussed in 2013 and 2017 working together to build a house and on May 2, 2020, Breitschmid e-mailed Olgiati, stating he "had a $400,000 budget and wanted to build a house on a property located in Riner, Virginia." Id. at ¶¶10-11. Breitschmid alleges that "Olgiati was excited about the opportunity to have his name affiliated with a residential construction project in the United States" and together they named the project the "Manahoac House." Id. ¶ 12. Over the following two years, the parties "attempted to collaborate on the design of the house" and Olgiati "provided Breitschmid with a rudimentary set of initial design drawings for the house;" however, due to "a number of factors," in April 2022 the parties' collaboration ended on bad terms. Id. ¶¶ 13-14.

Breitschmid designed and built a "new and different house" with an architecture firm located in Charlottesville, Virginia, which house design is "not based upon, nor is it a version . . . of, any of the design drawings created by Olgiati in relation to the Manahoac House." Id. ¶ 15. On August 13, 2022, Olgiati posted a message on Instagram, where he has approximately 190,000 followers, with the following allegedly false statement ("the Statement"):

> Markus Breitschmid together with local architects executes a distorted version of my design for the Manahoac House in Riner, Virginia that I do not approve.

See Ex. A. Many of these 190,000 followers know Breitschmid "personally and professionally." Id. ¶ 23. Breitschmid alleges that as a result of publishing the Statement, he has "incurred damage to his personal reputation, humiliation, embarrassment and mental anguish" as well as

damage to his reputation in business and trade. Id. ¶¶ 27, 31. He filed a counterclaim alleging

that the Statement constitutes both defamation (Count I) and defamation per se (Count II).

## II.    Legal Standards

### A.  Motion to Dismiss

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544,

556 (2007). However, a complaint does not satisfy this standard with only "labels and

conclusions" or a "formulaic recitation of the elements of a cause of action." Id. (citations

omitted). The complaint must assert facts that "nudge[] their claims across the line from

conceivable to plausible." Twombly, 550 U.S. at 570.

### B.  Defamation

To prove a defamation claim under Virginia law, Breitschmid must show (1) publication;

(2) of an actionable statement; and with (3) the requisite intent. Chapin v. Knight-Ridder, Inc.,

993 F.2d 1087, 1092 (4th Cir. 1993). Whether a statement is reasonably capable of the

defamatory meaning attributed to it is a matter of law for the trial judge to determine. WJLA-TV

v. Levin, 564 S.E.2d 383, 390 (Va. 2002). To be "actionable", a plaintiff must prove that the

statement is both false and defamatory. Ebersole v. Kline-Perry, 292 F.R.D. 316, 321 (E.D. Va.

2013) (noting that truth "acts [as] an absolute defense to any defamation") (citing Goddard v.

Protective Life Corp., 82 F.Supp.2d 545, 560 (E.D. Va. 2000)). On a motion to dismiss, the court

credits the allegations that the statements were false and focuses on whether the statement was

defamatory. Chapin, 993 F.2d at 1092. "Defamatory words are those 'tend[ing] so to harm the

reputation of another as to lower him in the estimation of the community or to deter third persons

3

from associating or dealing with him." Schaecher v. Bouffault, 772 S.E.2d 589, 594 (Va. 2015)

(citing Restatement (Second) of Torts § 559). To rise to the level of the required harm to an

individual's reputation, i.e. the defamatory "sting", the Supreme Court of Virginia has stated that

defamatory language:

> tends to injure one's reputation in the common estimation of mankind, to throw
> contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule,
> or contempt, or which is calculated to render him infamous, odious, or ridiculous.

Schaecher, 772 S.E.2d at 594 (quoting Moss v. Harwood, 46 S.E. 385 (Va. 1904). Certain

statements are defamatory per se, including a false statement "which prejudice[s] such person in

his or her profession or trade." Shupe v. Rose's Stores, Inc., 192 S.E.2d 766, 767 (Va.1972).

Due to the principles of freedom of speech provided by the United States Constitution,

pure expressions of opinion are not actionable as defamation. Yeagle v. Collegiate Times, 497

S.E.2d 136, 137 (1998) citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 16–17, 20 (1990). To

be actionable as defamation, speech must be capable of being proven either true or false, "speech

which does not contain a provably false factual connotation, or statements which cannot

reasonably be interpreted as stating actual facts about a person" are not defamatory. Id. Still,

while expressions of pure opinion are not actionable as defamation, "factual statements made to

support or justify an opinion" can form the basis of a defamation claim. Lewis v. Kei, 708 S.E.2d

884, 891 (Va. 2011); see also Handberg v. Goldberg, 831 S.E.2d 700, 707 (Va. 2019) (noting

that the United States Supreme Court in Milkovich "refused to create a wholesale defamation

exception" for opinions because "expressions of 'opinion' may often imply an assertion of

objective fact") (citations omitted). Whether a statement is an expression of opinion is a question

of law for the court. Cashion v. Smith, 749 S.E.2d 526, 531 (Va. 2013); see also Webb v.

Virginian-Pilot Media Companies, LLC, 752 S.E.2d 808, 811 (Va. 2014) ("Ensuring that

4

defamation suits proceed only upon statements which actually may defame a plaintiff, rather than those which merely may inflame a jury to an award of damages, is an essential gatekeeping function of the court.").

The requisite intent a private figure must prove in a defamation action under Virginia law is that the defendant published the false statement either knowing that it was "false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based." Gazette, Inc. v. Harris, 325 S.E.2d 713, 724-25 (Va. 1985).

### III.    Analysis

Olgiati contends that the Statement is not actionable because it is an opinion and is not defamatory. Breitschmid claims, however, that Olgiati's Statement is "a verifiably false allegation" and that the "tenor of the Statement is one of accusation against Breitschmid." Dkt. 19. "Whether a statement is an actionable statement of fact or non-actionable opinion is a matter of law to be determined by the court." Jordan v. Kollman, 612 S.E.2d 203, 206 (Va. 2005). The court must also determine whether the Statement is reasonably capable of a defamatory interpretation. See Handberg, 831 S.E.2d at 706; see also Schaecher, 772 S.E.2d 589 ("Additionally, for a statement to be actionable as defamation, it must have "the requisite defamatory 'sting' to one's reputation," which is the second prong of the threshold to be established as a matter of law."). I find that the Statement is non-actionable opinion, and also conclude that it lacks the required "defamatory sting."

### A. The Statement is Olgiati's Opinion

To determine whether the Statement can be reasonably interpreted as asserting a fact, the court must examine both the language used by Olgiati, as well as the context. Milkovich, 497

5

U.S. at 20. The court must "assess how an objective, reasonable reader would understand a challenged statement by focusing on the plain language of the statement and the context and general tenor of its message." Snyder v. Phelps, 580 F.3d 206, 219 (4th Cir. 2009), aff'd, 562 U.S. 443 (2011).

A reasonable reader would understand the Statement on Instagram, that "Markus Breitschmid together with local architects executes a distorted version of my design for the Manahoac House in Riner, Virginia that I do not approve" to be Olgiati's opinion. Reading the Statement as a whole and considering the context, Olgiati is stating his subjective opinion. Olgiati's opinion, expressed on Instagram, is that a structure built by Markus Breitschmid and local architects is a distorted version of the Manahoac House design, which Olgiati had developed through a collaborative design project with Breitschmid, and Olgiati does not have a favorable opinion of that distorted version. While individuals may agree or disagree with an opinion, it is still a personal viewpoint. Opinions are "[s]tatements that are relative in nature and depend largely upon the speaker's viewpoint." Jordan, 612 S.E.2d at 206 (citation omitted). Whether any design, building, or other artistic creation is a distorted, improved, degraded, or enhanced version of another design, building, or artistic creation is generally understood as a subjective statement, based on the opinion of the speaker.

Likewise, a reasonable reader would understand Olgiati's statement that "I do not approve" to be another reflection of his personal viewpoint. The dictionary defines "approve" as (1) to have or express a favorable opinion of; (2) (a) to accept as satisfactory (b) to give formal or official sanction. "Approve" Merriam-Webster, https://www.merriam-webster.com/dictionary/approve [https://perma.cc/T4JG-MMBK]. Courts are instructed to examine the "verifiability of the statement," because a statement not subject to objective

6

verification is not likely to assert actual facts. Snyder, 580 F.3d at 219 citing Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1227 (7th Cir.1993) ("[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.").

In support of his argument that the Statement is "capable of being proven true or false" and is not merely an opinion, Breitschmid contends that "a jury is more than capable of comparing Olgiati's design for the Manahoac house to what Breitschmid actually built" to determine "whether Breitschmid's house is, *in fact*, a distorted version of Olgiati's design." Dkt. 19 (emphasis added). I disagree. The common meaning of "distorted" is "altered from a true, natural, or normal state, shape or condition." "Distorted" Merriam-Webster, https://www.merriam-webster.com/dictionary/distorted [https://perma.cc/Q8WA-3MSX]. The dictionary definition lists the synonyms of distorted as deformed, malformed, misshapen, monstrous, and shapeless. Id. A jury, like Olgiati, can have an opinion on whether the house is a "distorted version" of Olgiati's design; indeed, each juror is capable of having a different opinion. Some jurors might think the house is totally distinct, others an improved version, still others might agree with Olgiati. However, these opinions are incapable of being proven true or false. Here, Olgiati's Statement that the house is a "distorted version" of his own design is not an accusation of stealing, it is an opinion, and unlike an accusation of stealing, the Statement is not objectively verifiable.

In contrast, a statement by Olgiati accusing Breitschmid of stealing his design or copywritten work would likely be viewed differently under the defamation law. But those are not the words Olgiati used, and I cannot reasonably infer that meaning from the language of the Statement. While all inferences are taken in Breitschmid's favor, "such inferences cannot rise

above the language of the . . . statements themselves." <u>Schaecher</u>, 772 S.E.2d at 594. Here, Olgiati's statement was certainly not complimentary to Breitschmid and was likely embarrassing, but it is not actionable defamation because it is opinion.

**B. Even if the Statement is not an Opinion, it is not Defamatory**

The statement by Olgiati that Breitschmid's house is a "distorted version of [his] design for the Manahoac House" does not carry the required defamatory sting for an actionable claim. Breitschmid and Olgiati collaborated on the architecture project to build the "Manahoac House." Olgiati provided "rudimentary drawings," but then the collaboration ended badly, and Breitschmid, instead of using the drawings, decided to build a different house, with different architects, using a different design. Breitschmid has simply not plead facts to support his argument that readers would understand the Statement as an accusation of stealing, with the requisite defamatory sting. Instead, a reader would understand Olgiati to be accusing Breitschmid of negatively changing Olgiati's design, the design they collaborated on, and building a house that Olgiati dislikes.

Although Virginia law recognizes a claim for defamation by inference, implication, or insinuation, the "meaning of the alleged defamatory language cannot, by innuendo, be extended beyond its ordinary and common acceptation." <u>Webb</u>, 752 S.E. 2d at 811; <u>see</u> <u>also</u> <u>Carwile v. Richmond Newspapers</u>, 82 S.E.2d 588, 591–92 (Va. 1954) ("[A]llegedly defamatory words are to be taken in their plain and natural meaning and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used."). To be actionable, defamatory statements must affect one's reputation "to a magnitude sufficient to render one odious, infamous, or ridiculous, or subject to disgrace, shame, scorn, or contempt." 772 S.E.2d 589. Stating that a person you collaborated with in designing a house

negatively changed or "distorted" your design and then built the "distorted version," which you don't approve, falls short of an accusation of stealing or dishonesty, or an accusation that would similarly "render him infamous, odious, or ridiculous." <u>Schaecher</u>, 772 S.E.2d at 594. From the context set forth in the counterclaim, I cannot infer that the Statement is a defamatory accusation of stealing. Thus, even if the Statement can be interpreted as stating actual facts, and not simply as an expression of pure opinion, it is not actionable because it lacks the required defamatory sting.[1]

## IV. Leave to Amend

Breitschmid has also moved for leave to amend his affirmative defenses and counterclaims. Leave to amend under Rule 15(a) "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." <u>Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.</u>, 576 F.3d 172, 193 (4th Cir.2009). Breitschmid's motion for leave to amend the counterclaims, which seeks to add allegations to support his defamation claims, will be dismissed as futile. I find that the Statement is not actionable, and the additional allegations do not change that.

Breitschmid's motion to amend his affirmative defenses, to add an affirmative defense regarding Olgiati's "apparent failure to register or be licensed as an architect in Virginia" will be granted. Dkt. 24. As indicated at the hearing, Olgiati does not object to the motion to amend the affirmative defenses, and I find there is no prejudice.

---

[1] The context Breitschmid urges, where both parties are architects who recently attempted to collaborate on building a house, which ended on bad terms, suggests a relationship between the parties akin to cases involving unsatisfactory job performance, the expressions of opinion of an upset customer, or to the extent Olgiati ended up losing business to a "local architecture firm" even business rivals, which are "a natural part of commercial interactions" and not actionable as defamation. <u>See</u> e.g. <u>Cutaia v. Radius Engineering Intern., Inc.</u>, No. 5:11cv00077, 2012 WL 525471, at *8 (W.D.Va. Feb. 16, 2012) (collecting Virginia cases showing that "statements made by business competitors regarding their products and services, as well as statements made by customers regarding their satisfaction with a certain product or service, are a natural part of commercial interactions").

**V.  Conclusion**

Accordingly, Olgiati's motion to dismiss is granted, and Breitschmid's counterclaims for defamation and defamation per se will be dismissed. Breitschmid's motion for leave to amend his counterclaims is denied as futile, and Breitschmid's motion for leave to amend his affirmative defenses is granted.

An appropriate order accompanies this Memorandum Opinion.

Entered:  December 21, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge